FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MAY 1 1 2005

JAMES R. LARSEN, CLERK
_____ DEPUTY
YAKIMA, WASHINGTON

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RC INVESTMENTS INC., a Washington Corporation, dba CENTURY 21 COLUMBIA REAL ESTATE; and ROBERT GREENO AND CONNIE GREENO, HUSBAND AND WIFE<br><br>Plaintiffs<br>v.<br><br>ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a Minnesota Corporation,<br><br>Defendant | NO. 04-CV-5030-AAM<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, *INTER ALIA* |

Before the court are cross-motions for Summary Judgment. (Ct. Rec. 10, 16). RC Investments Inc. (Plaintiff) is represented by William J. Connor; St. Paul Fire and Marine Insurance Co. (Defendant) is represented by Margaret M. VanValkenburg. The motions were heard with oral argument on April 29, 2005.

Plaintiff filed a complaint in Franklin County, Washington Superior Court on March 9, 2004, asking for a Declaratory Judgment that coverage exists under its professional liability insurance policy issued by Defendant. Plaintiff contends it is covered for settlement costs paid arising out of claims in the *Valdez v. Grow, et al.* matter described below.

Defendant filed a Notice of Removal in federal court on March 19, 2004. (Ct. Rec. 1). On March 25, 2004, it filed an Answer and Counterclaim for Declaratory Judgment that it has no duty to defend or indemnify Plaintiff with respect to claims made against Robert Greeno, dba Century 21 Columbia Real Estate (Columbia), and RC Investments. (Ct. Rec. 2).

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT;
*INTER ALIA*          Page -1-

# I. Facts

## A. The Valdez Claim

In *Valdez v. Grow et al* (*Valdez*), filed in Franklin County, Washington on or about February 15, 2000, Agapito and Juanita Valdez sued their real estate agent, Becky Grow, for damages arising from several real estate transactions and loans associated with the sale of the Valdez orchard. (Ct. Rec. 20, Ex. 6). Ms. Grow was an independent contractor with Century 21-Columbia Real Estate (Columbia), a franchise formed by Robert Greeno through his company, RC Investments, Inc. (Ct. Rec. 20, p. 6). Among the defendants served with the original *Valdez* Summons and Complaint (Complaint) on or about February 17, 2000, were Ms. Grow and Robert Greeno, dba Columbia. (Ct. Rec. 12, Ex. 1, 2; Ct. Rec. 20, Ex. 9).

It is alleged by Roberto Greeno that all but one of the transactions were Ms. Grow's personal business, she was operating out of her scope of employment with Columbia, and he knew nothing about the alleged wrongdoing. (Ct. Rec. 20, p. 7, 9). Mr. Greeno answered the Complaint, but apparently nothing happened until July 21, 2001, when an Amended Complaint was filed. (Ct. Rec. 20, Ex. 12). RC Investments, Inc. was added as defendant in the Amended Complaint, along with Jerry and Jane Doe Hill and Columbia Mortgage and Investment, Inc., dba Columbia Mortgage. (*Id.*)

A new cause of action against defendant Robert Greeno was added to the Amended Complaint.[1] The Amended Complaint states in relevant part: "(Negligent Supervision - Defendant Robert Greeno) . . . The negligence of defendant Robert

---

[1] Allegation 2 of the *Valdez* Complaint and Amended Complaint are identical: "Defendant Becky Grow is a licensed real estate agent in the State of Washington employed by and working for Robert Greeno and Jane Doe Greeno, doing business as Centruy 21- Columbia Real Estate . . . . The acts of Becky Grow, as set forth herein, were done while acting as agent for defendants Robert Greeno and Jane Doe Greeno, doing business as Century 21-Columbia Real Estate."

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT;
INTER ALIA                              Page -2-

Greeno occurred while he was acting for and on behalf of Century 21 Columbia Real Estate, a Washington corporation whose name is R-C Investments, Inc." (Ct. Rec. 20, p.184). A new cause of action against Jerry Hill/Columbia Mortgage & Investment, Inc. for Negligence/Consumer Protection Violations was also added. (Ct. Rec. 20, p. 185). These new causes of action were based on the same basic allegations contained in the Complaint (paragraphs 1-37). (Ct. Rec. 20, p. 184-85).

The matter went to trial, and prior to the jury verdict, Mr. Greeno and the Valdezes settled for $100,000 on April 27, 2004. (Ct. Rec. 24, Ex. 19).

### B.    *The Insurance Policy*

The St. Paul professional liability protection policies for the periods March 16, 2000 through March 16, 2001 and March 16, 2001 through March 16, 2002, were "claims-made" policies (collectively referred to herein as "the Policy"). (Ct. Rec. 20, p. 37, 71). Both parties allege the Policy was a "full prior acts coverage-claims made policy." (Ct. Rec. 1, Complaint, p. 3; Ct. Rec. 2, Answer, p. 4).

Relevant excerpts of the Policy include the following provisions:

- **Important note. This is a claims-made insuring agreement.** [2] To be covered, a claim or suit must be first made or brought [against a protected person], and reported to us, while this agreement is in effect, or during a reporting period if one applies. (Ct. Rec. 20, p. 37, 71).
- We'll pay amounts any protected person is legally required to pay as damages for covered loss that:
  - is caused by a wrongful act committed on or after the retroactive date and before the ending date of this agreement;
  - results from the performance of your professional services by or for you; and
  - results in a claim or suit first made or brought while this agreement is in effect, or during the limited reporting period or the extended reporting period, if either one applies.    (Ct. Rec. 20, p. 38, 72).
- Retroactive date . . . is the earliest date a wrongful act may be committed

---

[2] This is a standard type of policy wherein coverage depends upon the claim being made and reported to the insurer during the policy period. "Claims-made policies permit insurers to more accurately predict their risks, which theoretically result in lower premiums." *Schwindt v. Commonwealth Ins. Co.*, 140 Wash. 2d 348, 356 n. 3, 997 P.2d 353 (2000) (*citing Safeco Title Ins. Co. v. Gannon*, 54 Wash. App. 330, 337, 774 P.2d 30 (1989).

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT;
*INTER ALIA*              Page -3-

and cause loss covered by this agreement. If the Coverage Summary indicates that no retroactive date applies, this agreement applies to covered wrongful acts committed at any time before the ending date of this agreement. (*Id.*).
- Wrongful act means: an error, omission, or negligent act; advertising injury; or personal injury. (Ct. Rec. 20, p. 38, 72).
- We'll have the right and duty to defend any protected person against a claim or suit for loss covered by this agreement. We'll have such right and duty even if all of the allegations of the claim or suit are groundless, false, or fraudulent. But we won't have a duty to perform other acts or services. (Ct. Rec. 20, p. 39, 73).
- Claim means a demand that seeks monetary damage. (*Id.*).
- During this agreement or the limited reporting period we'll apply this agreement to claims or suits for covered loss only when they're:
  - first made or brought against a protected person while this agreement is in effect; and
  - first reported to us while this agreement is in effect, or during the limited reporting period, of it applies. (Ct. Rec. 20, p. 40, 74).
- We'll consider a claim or suit for covered loss to be first made or brought against a protected person on the date that any protected person first receives written notice of that claim or suit. (*Id.*).
- We'll consider a claim or suit for covered loss to be first reported to us on the date that we first receive written notice from any protected person of a claim or suit made or brought against a protected person. (*Id*).
- We'll also consider all claims or suits for covered loss caused by a wrongful act, or a series of related wrongful acts, to have been made or brought on the date that the first of those claims or suits is first made or brought. (*Id*).
- Your employees, including temporary employees, are protected persons only for work performed within the scope of their employment by you. (Ct. Rec. 20, p. 42, 76).
- Independent contractors you hire are protected persons only for work performed within the scope of their duties for you. (*Id*).
- **Criminal, dishonest, fraudulent or intentionally wrongful acts or omissions.** We won't cover loss that results from any criminal, dishonest, fraudulent, or intentionally wrongful act or omission committed: by the protected person; or with the consent or knowledge of the protected person.
However, we won't apply this exclusion to an innocent insured. *Innocent Insured* means a protected person who did not:
  - personally participate in committing any such act or omission; or
  - remain passive after having personal knowledge of such act or omission. (Ct. Rec. 20, p. 43, 77).
- **Known Wrongful Acts:**
We won't cover loss that results from any wrongful act any protected person knew about before the beginning date of this agreement and could reasonably foresee would result in a claim or suit being made or brought. (Ct. Rec. 20, p. 44, 78).

### C. *Plaintiff's Tender Of Defense*

Robert Greeno alleges that he advised his local St. Paul agent of the *Valdez/Grow* matter at the time he was applying for coverage. Mr. Greeno states the

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT;
*INTER ALIA*** Page -4-

agent was concerned at first, but notified him that St. Paul would write a policy. (Ct. Rec. 20, p. 7). The policy was processed in April 2000, with an effective date of March 16, 2000. David Greeno, son of Robert Greeno and Columbia principal, states in his affidavit that he notified St. Paul in May 2001, of the Complaint filed in February 2000. (Ct. Rec. 20, p. 13). Tracking notes from St. Paul representative Marcia Warren confirm that she talked on the telephone with David Greeno on or about May 14, 2001, regarding the original Complaint. (Ct. Rec. 20, p. 164). A July 3, 2001, entry indicates Ms. Warren received materials from David Greeno and determined "insd was served in February 2000 and had actually filed an answer prior to the first coverage with St. Paul (3/16/00). Spoke with Dave Greeno on 6/27[/01] and advised there is no coverage. He indicated they had always been aware that the claim was made prior to the policy with St. Paul starting, but said that they had requested coverage in November of the previous year." Ms. Warren advised David Greeno that coverage only existed when a policy was issued. (*Id.*).

The Amended Complaint was filed in July 2001. The *Valdez* matter was re-tendered by Plaintiff with the Amended Complaint on or about July 2, 2002. (*Id.* at 162-63).

### D. St. Paul's Formal Denial Of Coverage

Ms. Warren sent a denial of coverage letter to Plaintiff on October 25, 2002. The basis of Defendant's denial of coverage was "the claim was made/suit brought before inception of first coverage." (Ct. Rec. 20, p. 162). A second letter was sent to Plaintiff's counsel on November 6, 2002, explaining the legal basis for declining the tender and coverage. ( Ct. Rec. 27, Ex. 7).

## II. Legal Standard

### A. Standard Of Review

Federal law provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT;
*INTER ALIA*        Page -5-

the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of identifying portions of the record that establish the "absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986). The substantive law will determine the materiality of facts. Only disputes over facts that might affect the outcome of the case under the applicable law will preclude entry of summary judgment. Factual disputes that are irrelevant will not be counted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505 (1986). If the moving party satisfies its burden, Rule 56(e) requires the party opposing the motion to respond by submitting evidentiary materials that designate 'specific facts showing that there is an genuine issue for trial." *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct.1348 (1986). In determining if summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. *Anderson*, 477 U.S. at 255. A party may obtain summary judgment only on a "claim, counterclaim or cross-claim or declaratory judgment." Fed. R. Civ. P. 56(a). Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the non-moving party. *Id.* at 250.

**B.     *Insurance Contract Interpretation***

In a diversity action, a federal district court applies the choice of law rules of the state in which it sits. *Federal Insurance Company v. Scarsella Brothers, Inc.*, 931 F.2d 599, 603 (9th Cir. 1991). In contract interpretation cases, Washington state courts generally apply the law of the state in which the contract was formed. *Id.* There is no dispute that Washington state law is the applicable law here.

Under Washington law, construction of an insurance contract is a question of law for the courts. *Kitsap County v. Allstate Ins. Co.*, 136 Wash. 2d 567, 964 P.2d 1173 (1998). The entire contract must be construed together to give force and effect to each provision. *Washington Public Utility Districts' Utilities Sys. v. Public Util.*

*Dist. No. 1 of Clallam Co.*, 112 Wash. 2d 1, 10, 771 P.2d 701 (1989). The policy should be given a "fair, reasonable and sensible construction, in a manner consistent with the way an average person purchasing insurance would understand the policy language. *E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 106 Wash. 2d 901, 907, 106 P.2d 439 (1986). Construction of the policy should be consistent with the apparent intent and objectives of the parties; it should not be strained or forced to lead to an extension or restriction of the policy. It should not be construed in a manner to lead to an "absurd conclusion, or render the policy nonsensical or ineffective." *Id.* (*citing Philadelphia Fire and Marine Ins. Co. v. Grandview*, 42 Wash. 2d 357, 255 P.2d 540 (1953).

In determining the parties' intent, the court will review the contract as a whole, examine its purpose, objective and subject matter, the circumstances of its making, the subsequent conduct of the parties and the reasonableness of their respective interpretations. *Washington Public Utility Districts' Utilities Sys.*, 112 Wash. 2d at 11 (*citations omitted*). However, evidence of what a party's subjective intentions regarding the contract is examined only to aid in the interpretation of the language. It is the duty of the court to determine the meaning of what is written, not what was intended to be written. *Berg v. Hudesman*, 115 Wash. 2d 657, 669, 801 P.2d 222 (1990). An insurance contract is ambiguous if the language on its face is susceptible to two different, but reasonable interpretations. *Id.* If the language on its face is ambiguous, the court will construe the contract in favor of the insured. If terms are not defined, they are given their normal, everyday meaning. *Kitsap*, 136 Wash. 2d at 576. Summary judgment in an insurance coverage case should be granted where there is no dispute about the facts and coverage depends solely on the language of the policy. *Stouffer & Knight v. Continental Casualty Co.*, 96 Wash. App. 741, 747, 982 P.2d 105 (1999).

///

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT;
*INTER ALIA*** Page -7-

## C. Coverage By Estoppel

The general rule regarding equitable estoppel in insurance policies is that "while an insurer may be estopped, by its conduct or its knowledge or by statute, from insisting upon a forfeiture of a policy, . . . under no conditions can the coverage or restrictions on the coverage be extended by the doctrine of waiver or estoppel." *Shows v. Pemberton*, 73 Wash. App. 107, 111, 868 P.2d 164 (1994) (*quoting Carew, Shaw and Bernasconi, Inc. v. General Cas. Co. of America*, 189 Wash. 329, 336, 65 P.2d 689 (1937). Estoppel does not apply where the insured seeks to eliminate a restriction specifically set forth in the policy. *Id.* The rationale behind this rule is that an insurer should not be required to pay for a loss for which it received no premium. *Saunders v. Lloyd's of London*, 113 Wash. 2d 330, 336, 779 P.2d 249 (1989). However, coverage by estoppel is not precluded where an insurer acts in bad faith in handling a claim, or accepts premium payments when coverage is not provided. *Shows*, 73 Wash. App. at 112 (*citing Safeco Ins. Co. v. Butler*, 118 Wash. 2d 383, 823 P.2d 499 (1983).

Bad faith can arise if an insurer breaches its duty to defend. *Holly Mountain Resources v. Westport Ins. Corp.*, __Wash. 3d __,104 P. 3d 725, 731 (2005). The duty to defend arises when "a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage." *Id.* However, if the claim is clearly outside the policy's coverage, the insurer has no duty to defend. *Id.* at 732 (insurer's policy clearly excluded contractual liability).

## D. Relation Back of the Amended Complaint

Under Washington Rules of Civil Procedure (CR)15(c), an amended complaint may relate back to the date of the original complaint. The Rule states:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

> An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the part to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that but for a mistake concerning the identity of the proper party, the action would have been brought against him.

An amendment that merely changes the capacity in which a party appears will relate back to the date of the original complaint. *Craig v. Ludy*, 95 Wash. App. 715, 719, 976 P.2d 1248 (1999) (citing *Hill v. Shelander,* 924 F.2d 1370, 1375-78 (7th Cir.1991)). Where the only change is a change in capacity, the requirements of CR 15(c) of notice and lack of prejudice in maintaining defense on the merits are necessarily satisfied. *Beal for Martinez v. City of Seattle*, 134 Wash. 2d 769, 780-81, 954 P.2d 237 (1998). Thus, a complaint amended to add a party in a new capacity is considered filed the date of the original complaint, and the added party is considered to have had notice as of the date of the original complaint.

### III. Discussion

Plaintiff contends that the Policy's "full prior acts coverage" precludes denial of coverage for loss arising from the Complaint and the Amended Complaint. It argues that Defendant had a duty to investigate, and failed to do so, thus giving rise to coverage by estoppel. (Ct. Rec. 17, p. 5-11). Plaintiff further contends the Amended Complaint is the first time a claim existed for RC Investments, the named insured; therefore, it is covered under the 2001 Policy. (Ct. Rec. 29, p.2). It also argues that Robert Greeno is an "innocent insured" under the Policy and the Known Wrongful Acts exclusion is ambiguous and, therefore, should be construed in its favor. (Ct. Rec. 17, p.14; Ct. Rec. 29, p. 4).

Defendant argues the plain language of the Policy establishes that loss arising from the *Valdez* claims is not covered. It asserts that the Amended Complaint is based on the same facts and against the same protected persons as the Complaint filed in February 2000, one month before Plaintiff had coverage under any Policy.

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT;
*INTER ALIA*** Page -9-

Defendant also argues that pursuant to the "Known Wrongful Acts" exclusion, there is no coverage because Robert Greeno, a protected person, knew about the acts and the claim against him and Columbia, which, as stated in the Amended Complaint, is a Washington corporation whose name is RC Investments. (Ct. Rec. 11, p. 15-16). Defendant contends that Plaintiff did not request a declaratory judgment of bad faith or coverage by estoppel in its motion; thus, it cannot request these in its memorandum. (Ct. Rec. 25, p. 4).

/ / /

### A. Undisputed Material Facts

Based on evidence submitted by Plaintiff and Defendant, it is undisputed that the Policy is (1) a claims-made policy with (2) full prior acts coverage, and (3) a beginning date of March 16, 2000, for the 2000 Policy, and March 16, 2001, for the 2001 Policy. (Ct. Rec. 20, Ex. 5, 8; Ct. Rec. 12, Ex. 6). There is no dispute that Robert Greeno is a protected person under the Policy and was served the Complaint on or about February 17, 2000. (Ct. Rec. 12, Ex. 2; Ct. Rec. 20, p. 7). There is no dispute that Robert Greeno was named as a defendant, doing business as Columbia, in the Complaint and the Amended Complaint. (Ct. Rec. 20, p. 85, 167). There is no dispute that the Amended Complaint filed in July 2001, added RC Investments as a defendant and added a "negligent supervision" claim against Robert Greeno. There is no dispute that Columbia is a Washington corporation whose name is RC Investments. (Ct. Rec. 20, p. 184; Ct. Rec. 12, Ex. 4, p. 18, Ex. 5). As the interpretation of an insurance contract is a matter of law to be decided by the court based on the plain language of the contract and applicable law, and the material facts of this case are undisputed, the court will determine the meaning of the contract and grant summary judgment accordingly.

### B. St. Paul's Duty to Defend Arising From The Complaint

Defendant's duty to investigate arises under the Policy when a claim alleges

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT;
INTER ALIA                    Page -10-

facts that could impose liability on the insured that is within the Policy's coverage. *Holly Mountain*, 104 P.3d at 731. However, if the claim is clearly outside the Policy's coverage, the Defendant has no duty to defend. *Id.* at 732. Here, the Policy clearly states: **"This is a claims-made insuring agreement.** To be covered, a claim or suit must be first made or brought against a protected person, and reported to us, while this agreement is in effect, or during a reporting period if one applies." (Ct. Rec. 20, p. 37, 40, 71, 74).

Mr. Greeno is a principal of RC Investments and Columbia and, therefore, a protected person under the Policy. He unquestionably had notice of the claim. (*See* Ct. Rec. 20, p. 7; Ct. Rec. 12, Ex. 2). Plaintiff argues that Robert Greeno did not have any personal knowledge of most of the transactions that gave rise to the Complaint and this precludes application of the claims-made provision. (Ct. Rec. 22, p. 2-4). However, Plaintiff's speculation regarding Robert Greeno's knowledge or culpability in the *Valdez* matter is irrelevant to this case, since it is only the potential for liability that gives rise to Defendant's duty to defend. What is relevant is the fact that a claim was made against Robert Greeno prior to the Policy beginning and that Robert Greeno knew of the claim.[3] *See Stouffer*, 96 Wash. App. at 747.

Plaintiff relies on *Truck Insurance Exchange v. Vanport Homes, Inc.*, 147 Wash. 2d 751, 58 P.3d 276 (2002) in arguing that Defendant breached its duty to defend. The court there specifically cited the general rule that the duty to defend

---

[3] Mr. Greeno also states he told the St. Paul agent about the complaint against him in the process of applying for insurance. An application form dated March 1, 2000, indicates applicant ("R-C Investments, Inc, DBA C21 Columbia Real estate") was not aware of any professional liability claims made against the applicant or any member of the firm within the past 3 years." (Ct. Rec. 23, Ex. 15, Ct. Rec.12, Ex. 5, p. 2-3). This conflicts with Mr. Greeno's statement that he disclosed the claim. Further, whether the St. Paul agent knew about the February 2000 claim is not dispositive in this case. St. Paul wrote the policy to exclude coverage for any claims made prior to the beginning date of the Policy, March 16, 2000.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT;**
*INTER ALIA*                    Page -11-

arises where the complaint alleges facts that would impose liability on the insured, but if the claim is not covered by the policy, the insurer has no duty to defend. *Id.* at 760 (*citing Unigard Ins. Co. v. Leven*, 97 Wash. App. 417, 425, 983 P.2d 1155 (1999)). In *Truck*, the complaint against the insured was interpreted as triggering the duty to defend. *Id.* at 761. Further, the court found the breach of that duty was in bad faith due to (1) violations of the Consumer Protection Act, (2) the insurer's "unconscionable delay" in responding to the insurer's request for an explanation of the denial (2 years later when it filed for a declaratory judgment), and (3) the insurer's representation that it had done an investigation and found no coverage, when, in fact, there had been little or no investigation. *Truck*, 147 Wash. 2d at 757, 763-64. As a remedy, and expressly as a result of the bad faith, the court ordered the insurer to cover the insured's loss. *Id.* at 765-66.

Recently, in *Holly Mountain*, the court distinguished *Truck*, holding that if an insured fails to show the insurer acted in bad faith, there is no presumption of harm or coverage by estoppel. *Holly Mountain*, 104 P.3d at 731. In *Holly Mountain*, the insurer reviewed the contract at issue for the insured, concluded the insured's complaint alleged non-covered actions, spoke with the insured on the telephone and explained why it was denying coverage. It followed up with a letter fully explaining its decision. *Id.* The court ruled there was no bad faith and no insurance coverage. *Id.* at 734.

Here, Plaintiff's Complaint in the captioned matter does not request a finding that Defendant acted in bad faith. Even if it did, the record does not reveal bad faith. According to David Greeno's affidavit and St. Paul tracking notes submitted by Plaintiff, David Greeno contacted St. Paul in May 2001 about the February 2000 claim.[4] (Ct. Rec. 20, p.13, 163-64). Ms. Warren reviewed information sent by David

---

[4] David Greeno is the son of Robert Greeno, a principal of RC Investments and a protected person under the Policy. (Ct. Rec. 20, Ex. 2; Ct. Rec. 23, Ex. 15).

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT;
*INTER ALIA*** Page -12-

Greeno in May 2001, and advised him on June 27, 2001, that there was no coverage, as the claim was filed prior to issuance of the Policy. (Ct. Rec. 20, p. 163). Ms. Warren noted that David Greeno stated he knew the claim was made before the Policy started, but they had requested coverage in November 2000. Ms. Warren advised him the Policy was only in effect after being issued. (*Id.*; *see also* Ct. Rec. 24, p. 5).

Based on these facts, taken from evidence submitted by Plaintiff, it is clear that Defendant communicated appropriately and in a timely manner regarding coverage under the 2000 Policy. Defendant's conclusion at the time of Plaintiff's tender that the claim against Plaintiff was first made in February 2000 before Policy coverage began was reasonable, and there was no unconscionable delay in its response to Plaintiff regarding both tenders. Ms. Warren explained Defendant's denial to David Greeno in May 2001. Ms. Warren responded in a timely manner to Plaintiff's counsel's request for a formal explanation, as did counsel for Defendant, who cited relevant law and gave a full explanation of St. Paul's position. (Ct. Rec. 27, p. 7). Defendant's actions were neither unreasonable, frivolous, or unfounded. Bad faith is not established and coverage by estoppel does not apply. *Holly Mountain*, 104 P.3d at 733.

C.  *The Known Wrongful Acts Exclusion To Full Prior Acts/ Claims-Made Coverage*

Plaintiff argues that since the Policy provides "full prior acts" coverage, it should cover the *Valdez* claim, regardless of when it was made.[5] (Ct. Rec. 17, p.

---

[5] Plaintiff also appears to argue that the retroactive date, or lack thereof, affects its coverage. (Ct. Rec. 29, p. 5-6). The Policy states: "Retroactive date" refers to the "earliest date a wrongful act may be committed and cause loss covered by this agreement. If the Coverage Summary indicates that no retroactive date applies, this agreement applies to covered wrongful acts committed <u>at any time before the ending date of this agreement</u>." Here, it is clear that no retroactive date applies to the Policy,

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT;**
*INTER ALIA*                             Page -13-

12). However, an insurance contract must be construed together to give full effect to each provision. *Washington Public Utility Districts' Utilities Sys.* 112 Wash. 2d at 10. Plaintiff fails to apply all provisions necessary to trigger coverage under the Policy. First, the damage has to be caused by a **covered wrongful act** committed at any time before the ending date of the agreement. (Ct. Rec. 20, p. 38). Second, as discussed above, **the claim** has to be first made or brought while the agreement is in effect. These prerequisites for coverage are clearly stated on the cover of the Policy and in the body. (Ct. Rec. 20, p. 37, 38, 71, 72). Thus, it is possible for a covered wrongful act to occur prior to the beginning date of the Policy (hence, "full prior acts" coverage), but the actual claim for damages has to be made during the Policy period for coverage to kick in. Finally, if a wrongful act falls under the Known Wrongful Acts exclusion, claims arising from those acts are not covered regardless of when the claim is made. The Known Wrongful Acts exclusion provides that if any protected person knew about a wrongful act before the beginning date of the Policy and could reasonably foresee it would result in a claim or suit, any loss arising from that claim is not covered. (Ct. Rec. 20, p. 44).

For example, if the *Valdez* claim had been filed after March 16, 2000, arguably, coverage may have applied, even though all of the alleged errors, omissions and negligent acts happened prior to March 16, 2000. However, that is not the case here because the claim was served on Mr. Greeno prior to beginning date of the Policy, excluding it from the "claims-made" coverage requirement. Further, the alleged wrongful acts are not covered, pursuant to the Policy's Known Prior Acts exclusion, because Robert Greeno received notice of these acts on February 17, 2000, prior to the beginning date of the Policy.

---

and Defendant does not argue to the contrary. (Ct. Rec. 20, p. 20, 38, 50, 69, 72). Since the parties agree that the Policy provides "full prior acts" coverage, there is no issue regarding a retroactive date.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT;**
*INTER ALIA*                          Page -14-

Plaintiff argues that RC Investments was not a protected party and not a defendant when the first complaint was filed, so the exclusion does not apply. (Ct. Rec. 29, p. 3-4). This argument fails because the Policy clearly states that notice to **any** protected person precludes coverage. Robert Greeno, an undisputed protected party, knew about the claim: he was a named party and was served on February 17, 2000. As defendant in the both *Valdez* complaints, Mr. Greeno had knowledge of the alleged wrongful acts upon which both claims were based, and knew with certainty that it had resulted in a claim against one of his independent contractors and himself.

Plaintiff appears to argue that the Known Wrongful Acts exclusion is void because Mr. Greeno disclosed the fact of the *Valdez* matter to his insurance agent. (Ct. Rec. 22, p. 4). The Policy has no provision that disclosure of known wrongful acts will give rise to coverage for any resulting loss. The purpose of a Known Wrongful Acts exclusion is to allow the insurer to assess its risk and establish an appropriate premium for coverage. *See Id.* at 577. The court cannot interpret the Policy to expand or restrict it beyond what is fairly within its terms, therefore, the court will not add a provision that prior disclosure of a wrongful act exempts it from the Policy's Known Wrongful Act exclusion. *See Tewell, Thorp et al v. Continental Cas. Co.*, 64 Wash. App. 571, 576, 825 P.2d 724 (1992). Thus, whether Mr. Greeno told Mr. Anderson about the claim prior to filling out his application is not relevant to the interpretation of the plain language of the Policy.

Plaintiff also argues that the Known Wrongful Act exclusion is ambiguous, and thus should be construed against the Defendant. Specifically, it argues that the phrase "beginning date of this agreement" in the exclusion is undefined. (Ct. Rec. 17, p. 14). Exclusionary clauses are construed against the insurer when ambiguous; however, the court may not create an ambiguity where none exists. *Tewell*, 64 Wash. App. at 576 (*citing Morgan v. Prudential Ins. Co. of Am.*, 86 Wash. 2d 432, 435, 545 P.2d 1193 (1976); *West Am. Ins. Co. v. State Farm Mut. Auto Ins. Co.*, 80 Wash. 2d

38, 44, 491 P.2d 641 (1971). Language in insurance policies is construed according to popular and ordinary meaning. *Kitsap*, 136 Wash. 2d at 576. A beginning date for an insurance contract ordinarily means the date the agreement between the parties begins: March 16, 2000, as indicated on the introduction page of the 2000 Policy, and March 16, 2001, on the introduction page of the 2001 Policy. (Ct. Rec. 20, p. 21, 53).

Plaintiff's reliance on *St. Paul Fire and Marine Insurance Co. v. Metpath*, 38 F. Supp. 2d 1087 (D. Minnesota 1999) is not persuasive. *Metpath* involved the interpretation of the phrase "effective date of this agreement," in the insurer's known prior acts exclusion for an entity that was added to an insurance policy through endorsement. *Id.* at 1093. The phrase was ambiguous, as it did not differentiate between entities added during the course of the agreement and those included at the inception of the policy. Both parties propounded reasonable interpretations. The court construed the language in favor of the insured. *Id.* at 1093-95.

Here, the facts do not give rise to ambiguity. The beginning date for each Policy is clearly indicated. The Complaint was served on Robert Greeno before the stated beginning dates of the 2000 and 2001 Policies. Mr. Greeno knew about the wrongful acts that could have, and actually did, result in claims against him before he applied for insurance. (Ct. Rec. 12, Ex. 2). There is no ambiguity in the term "beginning date."

### D. *St. Paul's Duty To Defend Arising From The Amended Complaint*

The Amended Complaint was filed in July 2001 and Robert Greeno states he hired a new attorney in October 2001. (Ct. Rec. 20, p. 9; *see also* Ct. Rec. 24, p. 41). According to Ms. Warren's notes, St. Paul received another tender from Plaintiff's new counsel on or about July 23, 2002, based on the Amended Complaint and the fact that RC Investments Inc. was named for the first time. This was one year after the Amended Complaint was filed and approximately eight months after Plaintiff

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT;
*INTER ALIA*** Page -16-

hired new counsel.[6] Ms. Warren spoke with Plaintiff's counsel on July 25, 2002, and informed him she did not think there was coverage since the claim was **first** made against a protected person before the Policy was in effect. (Ct. Rec. 20, p. 163). A formal letter of denial was sent on October 3, 2002, by Ms. Warren; at the request of Plaintiff's counsel, another was sent on December 2002, fully explaining the basis for denial. (Ct. Rec. 27, Ex. 7) (letter from St. Paul counsel).

As discussed above, Defendant reasonably believed the loss claimed in the Complaint was not covered under the Policy. The Amended Complaint is based on the same facts as the Complaint. It names as defendants, among others, Robert Greeno, dba as Columbia and RC Investments, Inc., and alleges that Columbia is a Washington corporation whose name is RC Investments. (Ct. Rec. 20, p. 165, 184) (Amended Complaint). Finally, Plaintiff's application for coverage, dated March 1, 2000, lists the legal name of the applicant as "R-C Investments, Inc. DBA C21 Columbia Real Estate." (Ct. Rec. 12, Ex. 5, p. 2). The new cause of action (Negligent Supervision) is against "Defendant Robert Greeno," and not against RC Investments. (Ct. Rec. 20, p. 184). Robert Greeno was a protected party under the Policy at all times and had prior knowledge of the alleged wrongful acts and original Complaint.

The fact that the Amended Complaint adds RC Investments as a party in interest, with a new cause of action, does not change the basis of the case. The distinction in capacity (Greeno dba Columbia and RC Investments, Inc. dba Columbia) does not create a new claim. The Amended Complaint relates back to the date of the original complaint and is considered filed the date of the original

---

[6] Counsel for Plaintiff filed an affidavit and accounting for work from November 19, 2001 through October 5, 2004, with regard to the *Valdez* claim. It does not detail work performed or dates of correspondence with St. Paul. (Ct. Rec. 24, p. 40-41).

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT;**
*INTER ALIA*           Page -17-

complaint. CR 15(c); *see also Craig,* 95 Wash. App. at 780 (*citing Beal,* 134 Wash. 2d at 719). The relation back rule is reflected in the Policy provisions as well. The Policy provides that "We'll also consider all claims or suits for covered loss caused by a wrongful act, or a series of related wrongful acts, to have been made or brought on the date that the **first** of those claims or suits is first made or brought." "Related wrongful acts" are two or more wrongful acts that are directly or indirectly related to the same loss. (Ct. Rec. 20, p. 40, 79). The Complaint and Amended Complaint allege basically the same facts, of which Robert Greeno became aware when served in February 2000. The addition of the negligent supervision claim against Robert Greeno arose from the original facts, therefore, it is a related wrongful act.

Even if the Amended Complaint were treated as a new claim, the Known Wrongful Acts exclusion in the 2001 Policy excludes coverage for loss incurred as a result of the Amended Complaint because Robert Greeno knew of alleged wrongful acts and potential liability stemming from those allegations before the beginning of the 2001 Policy, under which he was a protected person. Plaintiff's assertion that Robert Greeno did not have personal knowledge of Ms. Grow's actions in the *Valdez* matter is not dispositive, and is not a basis for finding Defendant in breach of its duty to investigate under the 2001 Policy.[7] The Known Prior Acts exclusion is based on a protected party's knowledge of allegations and their potential for loss, not the protected party's proven participation in the alleged wrongful acts or the merit of the claim. *See Tewell,* 64 Wash. App. at 575, 577. Mr. Greeno was acutely aware of

---

[7] Although Plaintiff's statement in its Reply that "Mr. Greeno denies he knew anything about the second closing until long after he submitted the claim for coverage" is arguably a disputed fact, it is not material to the interpretation of the Policy, which is based on the plain language and applicable law. (*See* Ct. Rec. 29, p. 8). Further, Plaintiff's argument that Robert Greeno is an "innocent insured" is without merit because, as reflected in the court's decision, the Policy did not cover loss arising from either the Complaint or the Amended Complaint.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT;**
*INTER ALIA*                                    Page -18-

the allegations in the Amended Complaint and potential for loss prior to the beginning date of the 2001 Policy. The Defendant reasonably interpreted the claims-made provision and the Known Wrongful Acts exclusion in denying coverage for loss arising from the Amended Complaint, and as discussed above, did not exhibit bad faith in its subsequent dealings with Plaintiff.

## IV. Conclusion

There are no issues of material fact. The interpretation of an insurance contract is an issue of law. The only disputed facts (did Mr. Greeno tell the St. Paul agent about the claim during his application in 2000?; was Mr. Greeno liable to the Valdezes based on Ms. Grow's actions?; is Ms. Grow a protected person?) are not dispositive to the interpretation of the insurance contract. Therefore, summary judgment is appropriate. Reading the Policy as a whole and giving effect to all the provisions therein, it is clear that "full prior acts coverage" does not negate the claims-made provision or the Known Wrongful Acts exclusion in the Policy. There is no ambiguity in the claims-made provision or the Known Wrongful Acts exclusion, and the court will not expand or restrict coverage where the provisions are clear. The plain language of the Policy clearly precludes coverage of the claims asserted in the Complaint and the Amended Complaint in *Valdez*. Defendant had no duty to defend Plaintiff or indemnify loss incurred as a result of the Complaint and Amended Complaint. Accordingly,

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment (Ct. Rec. 10) is **GRANTED**.

2. Defendant's Motion to Strike (Ct. Rec. 26) is **DISMISSED** as moot.

3. Plaintiff's Motion for Summary Judgment (Ct. Rec.16) is **DENIED**.

///

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT;
*INTER ALIA*** Page -19-

4. The District Executive shall enter judgment accordingly, shall forward copies of the judgment and this order to counsel of record, and shall **CLOSE** this file.

DATED this 11 day of May 2005.

ALAN A. McDONALD
SENIOR UNITED STATES DISTRICT COURT JUDGE